**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON DIVISION**

| | |
|---|---|
| TECHTRONIC INDUSTRIES NORTH AMERICA, INC.; TTI CONSUMER POWER TOOLS, INC. d/b/a TECHTRONIC INDUSTRIES POWER EQUIPMENT; and TECHTRONIC INDUSTRIES CORDLESS GP, <br><br> Plaintiffs, <br><br> v. <br><br> JASON MORRIS, an individual; RICHARD (RICK) DAVIDIAN, an individual; and MADI, LLC, a South Carolina limited liability company, <br><br> Defendants. | Civil Action No.: <br><br><br><br> **COMPLAINT** <br> **JURY DEMAND** |

Plaintiffs Techtronic Industries North America, Inc., TTI Consumer Power Tools, Inc. d/b/a Techtronic Industries Power Equipment, and Techtronic Industries Cordless GP (collectively, "TTI" or "Plaintiffs") file this Complaint against Defendants Jason Morris ("Morris"), Richard (Rick) Davidian ("Davidian"), and MADI, LLC ("MADI") (collectively, "Defendants"), and allege as follows:

## I.   NATURE OF THE ACTION

1.   This is an action arising from the egregious and sustained misconduct of two former high-ranking TTI employees—Jason Morris and Richard Davidian—who, while serving in positions of trust and confidence at TTI, secretly formed and operated a competing business,

MADI, LLC, using TTI's confidential information, trade secrets, supplier relationships, and resources to compete directly with their employer.

2.    For more than a decade, while drawing substantial salaries and benefits from TTI, Morris and Davidian exploited their privileged positions to build a competing company—MADI, LLC—that directly competes with TTI's HART and Milwaukee Tool product lines in the power utility tools market.

3.    Morris and Davidian concealed their competing business activities from TTI, breached their contractual obligations under multiple agreements with TTI, violated their fiduciary duties of loyalty, misappropriated TTI's trade secrets and confidential information, and fraudulently obtained severance payments by misrepresenting their employment status after termination.

4.    Morris and Davidian collaborated in their tortious conduct with non-party Steve Steadings, another former TTI executive who had reported to Morris at TTI.

5.    MADI knowingly induced and benefited from Morris's and Davidian's breaches of their contractual and fiduciary duties to TTI.

6.    Morris and Davidian actively concealed their work with MADI from TTI.  It was only in January 2026, when Morris publicly announced his role with MADI, falsely characterizing it as a "new role," that TTI discovered the connection.  TTI then immediately investigated Morris and Davidian's prior conduct and promptly filed this suit.

7.    TTI now brings this action to recover damages caused by Defendants' misconduct, to obtain disgorgement of profits unjustly obtained, and to vindicate its contractual and proprietary rights.

## II.    THE PARTIES

2

8.      Plaintiff Techtronic Industries North America, Inc. is a corporation organized and existing under the laws of Delaware with its principal place of business in Fort Lauderdale, Florida. Techtronic Industries North America, Inc. is a subsidiary of Techtronic Industries Co. Ltd.

9.      Plaintiff TTI Consumer Power Tools, Inc. d/b/a Techtronic Industries Power Equipment is a corporation organized and existing under the laws of Delaware with its principal place of business at 100 Innovation Way, Anderson, South Carolina 29621.

10.      Plaintiff Techtronic Industries Cordless GP is an entity organized and existing under the laws of Nevada with its principal place of business at 100 Innovation Way, Anderson, South Carolina 29621.

11.      Defendant Jason Morris is an individual who, upon information and belief, currently resides at 3836 Moss Creek Circle, Mountain Brook, Alabama 35223. Morris was formerly employed by TTI as President-Consumer Products, with his employment terminating on January 3, 2024.

12.      Defendant Richard (Rick) Davidian is an individual who, upon information and belief, currently resides at 640 Belle Shoals Road, Pickens, South Carolina 29671. Davidian was formerly employed by TTI as Director of Engineering for the HART division, with his employment ending on October 28, 2022, pursuant to a voluntary early retirement.

13.      Defendant MADI, LLC is a South Carolina limited liability company that was organized on May 28, 2010, with its current registered address at 214 E. Greenville St., Anderson, South Carolina 29621.

### III.      JURISDICTION AND VENUE

14.      This Court has jurisdiction over the federal claims asserted herein, including claims under the Defend Trade Secrets Act, 18 U.S.C. § 1836, et seq., pursuant to 28 U.S.C. § 1331.

15. This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367 because such claims are so related to the federal claims that they form part of the same case or controversy.

16. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1), (2), and (3) because a substantial part of the events or omissions giving rise to the claims occurred in this District, a substantial part of the property that is subject to the action is situated in this District, and Defendants are subject to personal jurisdiction in this District.

17. This Court has personal jurisdiction over Defendants. Defendant Davidian resides in South Carolina. Defendant MADI is a South Carolina limited liability company with its principal place of business in South Carolina. Defendant Morris's conduct as alleged herein took place in South Carolina and Morris executed agreements with TTI providing for jurisdiction in this Court and consented to personal jurisdiction in this Court.

## IV.     FACTUAL ALLEGATIONS

### A. TTI's Business and the Defendants' Employment

18. TTI and its affiliated companies constitute one of the world's largest manufacturers and marketers of power tools, hand tools, outdoor products, and accessories. As a pioneer in Power Tools, Outdoor Power Equipment, Floorcare, and Cleaning Products, TTI serves professional, industrial, Do It Yourself, and consumer markets worldwide. With more than 47,000 employees globally, the company's relentless focus on innovation and strategic growth has established its leading position in the industries it serves, including the power utility industry. TTI manufactures, distributes, and/or sells leading brands including: Milwaukee, HART, RYOBI, AEG, Empire, Imperial Blades, Stiletto, Kango, Hoover, Oreck, VAX, and Dirt Devil.

4

19.    TTI takes reasonable steps to protect the secrecy of its highly proprietary, confidential, and trade secret information including, but not limited to: password protecting computers and networks so that only users with valid login IDs and passwords can obtain access to such information; limiting employee access to such information based on an employee's specific need to know such information in order to perform their job functions; requiring that employees agree to protect TTI's confidential information and trade secrets; restricting physical access to their offices, IT systems, and manufacturing facilities; maintaining employment policies regarding the protection of confidential information and trade secrets during employment; requiring the return of such information at the end of an employee's employment; and restricting the disclosure and transmission of their confidential information and trade secrets.

20.    TTI hired Jason Morris on or about January 28, 2008. Morris rose through the ranks at TTI and ultimately served as President-Consumer Products for TTI's HART brand, a position of significant trust and responsibility, with access to highly confidential business information and trade secrets. Morris was an officer of TTI.

21.    TTI hired Richard Davidian on or about June 3, 2008, as Director of Engineering for the Consumer Power Tools division. In this role and his subsequent role as Director of Engineering for TTI's HART brand, Davidian was responsible for engineering and product development for TTI's hand tools and accessories, and had extensive access to TTI's confidential technical information, product designs, testing specifications, and proprietary information concerning supplier relationships.

22.    Throughout their employment, Morris and Davidian had access to TTI's most sensitive and valuable confidential information and trade secrets, including supplier relationships, vendor contact information, distributor information, pricing data, new product development plans,

product expansion plans, company financials, corporate strategy, market research, manufacturing specifications, testing procedures, customer relationships, and strategic business information.

**B. The Defendants' Agreements with TTI**

23.     At the commencement of their employment with TTI, both Morris and Davidian executed Agreements Regarding Trade Secrets and Confidential or Proprietary Information and Inventions ("2008 Employment Agreements").

24.     The 2008 Employment Agreements contained provisions requiring both Morris and Davidian to: (a) hold in confidence and not disclose or use any confidential information or trade secrets of TTI; (b) assign to TTI all inventions, discoveries, and improvements made during their employment; (c) refrain from competing with TTI for six months following termination of employment; and (d) return all TTI property upon termination.

25.     On January 23, 2008, Morris signed TTI's Ethics Handbook, acknowledging his receipt and understanding of the policies contained therein. On June 3, 2008, Davidian signed TTI's Ethics Handbook, acknowledging his receipt and understanding of the policies contained therein.

26.     The Ethics Handbook required employees to avoid conflicts of interest, to disclose any financial interest in a supplier, customer, or competitor, and prohibited using TTI's proprietary data for personal benefit.

27.     Throughout their employment, Morris and Davidian annually confirmed their obligations to maintain the confidentiality of TTI's proprietary information through the company's performance review process. Among other things, Morris's and Davidian's annual reviews included a written annual confirmation that they not disclose or use company proprietary information; that they not remove documents, information or other company property from the

6

premises of any company location; that they prevent disclosure of proprietary information to third parties; that they promptly disclose and give to the company any proprietary information that they develop or acquire.

28.    In February 2011, both Morris and Davidian executed Agreements Limiting Certain Unfair Activities ("ALCUAs") with TTI. Morris executed his 2011 ALCUA on February 17, 2011, and Davidian executed his 2011 ALCUA on February 22, 2011.

29.    The 2011 ALCUAs were entered into in consideration of, among other things, Morris and Davidian's access to the Company's and Affiliated Companies' customer relationships, goodwill, Confidential Information, and Trade Secrets, and the Company's agreement to pay Morris 52 weeks and Davidian 26 weeks of their regular base pay as severance in the event the Company terminated their employment for reasons other than Cause.

30.    The 2011 ALCUAs contain, among other provisions: (a) obligations not to use or disclose the Company's or Affiliated Companies' Trade Secrets during and after employment (Section 3); (b) obligations not to use or disclose Confidential Information during employment and for two years following termination (Section 4); (c) a requirement that all Proprietary Creations—defined as inventions, discoveries, designs, improvements, creations, and works conceived, authored, or developed during employment—are the sole and exclusive property of the Company, with Morris and Davidian assigning all rights, title, and interest therein to the Company (Section 5); (d) a duty to return all Company property and Company Information upon termination, and a prohibition on copying, duplicating, or transferring Company Information without express written consent (Section 6); (e) an undivided duty of loyalty, including a duty to promptly disclose to the Company any decision to terminate employment, enter into competition with the Company, or enter into competition with an Affiliated Company (Section 7); (f) twelve-month post-employment

7

restrictions on selling or soliciting the sale of Competing Products (Sections 8–11); (g) twelve-month post-employment limited territorial restrictions on executive, management, design, development, production, and testing activities involving Competing Products (Sections 12–13); and (h) a twelve-month post-employment non-solicitation of employees provision (Section 14).

31. Upon Morris's termination on January 3, 2024, Morris executed a Confidential Severance Agreement and Release ("2024 Separation Agreement") and a 2024 Agreement Limiting Certain Unfair Activities ("2024 ALCUA") with TTI.

32. Under the 2024 Separation Agreement, Morris was to receive, among other benefits: (a) 52 weeks of severance pay; (b) an additional conditional 52 weeks of severance pay, contingent upon Morris's diligent search for employment and lack of other employment; (c) company vehicle benefits; (d) COBRA contributions; and (e) outplacement services.

33. The 2024 ALCUA contains, among other provisions: (a) obligations not to disclose or use TTI's confidential information and trade secrets; (b) requirements to return all company property; (c) a duty of loyalty requiring disclosure to TTI of any competition with TTI or its affiliated companies; (d) restrictions on performing unfair competitive services for restricted competitors; (e) limited territorial restrictions; and (f) non-solicitation of employees provisions.

34. The 2024 ALCUA provides that breach of the agreement absolves TTI of any obligation to pay remaining severance payments, additional conditional severance payments, COBRA contributions, vehicle payments, or other benefits, and entitles TTI to recover attorney's fees and costs arising from such breach.

35. Upon Davidian's separation on October 28, 2022, Davidian executed a Confidential Severance Agreement and Release pursuant to TTI's Voluntary Early Retirement Incentive

8

Program. Under this agreement, Davidian received 52 weeks of severance, plus COBRA contributions at active employee rates.

36.    The Davidian severance agreement provides that Davidian's 2011 ALCUA continued in full force and effect, and that breach of such agreement would absolve TTI of any obligation to pay remaining severance or other benefits.

### C. Formation of MADI During Employment

37.    On May 21, 2010, MADI, LLC was organized in the State of South Carolina. The organizers listed on the original Articles of Organization were Deborah Lynn Morris and Venice Juanna Davidian—the wives of Defendants Morris and Davidian, respectively. Morris and Davidian caused their wives to be listed as the organizers of MADI, LLC in order to conceal that Morris and Davidian in fact were the individuals who had formed and were in control of MADI.

38.    On August 2, 2010, Amended Articles of Organization were filed naming Morris and Davidian as managers of MADI.

39.    MADI operates as a competing lineman tools company, selling products including hammers, pliers, wire brushes, knives, sockets, storage, and other tools that directly competed with TTI's HART brand and actively compete with Milwaukee Tool product lines in the hand tool, storage, and power utility market. MADI's product line includes over 60 SKUs of lineman tools.

40.    Despite serving as managers of MADI beginning in August 2010, neither Morris nor Davidian disclosed their involvement with MADI to TTI at any time, including after executing the ALCUAs that expressly required such disclosure.  Instead, Morris and Davidian actively concealed from TTI that they had any relationship with MADI.

41.     Under Morris and Davidian's leadership, MADI began selling competing products to the power utility industry as early as 2011 and continued developing, marketing, and selling such products throughout the remainder of Morris and Davidian's employment with TTI.

**D. Morris's MADI Activities During TTI Employment**

42.     Morris conducted business on behalf of MADI while still employed at TTI, including:

a.     Multiple emails show Morris using a MADI, LLC email address (jm@madillc.com) to conduct business with suppliers.

b.     On August 18, 2021, Morris (jm@madillc.com) emailed various Heavy Hitter email addresses and Rick Davidian (rick.davidian@ttigroupna.com) a MADI PO. Morris's signature block reflected that he was writing on behalf of MADI.

c.     In August 2021, Morris issued purchase orders on behalf of MADI, LLC for the manufacture of MLH-1 Milled Lineman Hammers from Heavy Hitter/Easy Strike, ordering 2,500 units at $9.14 each, totaling $22,850.

d.     Morris participated in MADI product development discussions, including hammer improvements and screwdriver designs, while copying Davidian at his TTI email address.

e.     Morris participated in multiple MADI meetings scheduled throughout 2022 while he was still serving as TTI's President-Consumer Products, including meetings with "Worldwide Express."

f.     Morris's 2022 MADI Calendar by Month reveals the MADI Meetings and Customer Events he had scheduled for 2022. There were 16 such events on the calendar in the first half of 2022.

g.    On August 9, 2022, Morris emailed detailed TTI Supplier and Vendor Excel sheets to his personal email. He then used this information in connection with MADI's business.

h.    On December 2, 2022, Steve Steadings (steve@madillc.com) emailed Morris MADI inventory and weeks of supply.

i.    On January 11, 2023, Morris emailed Steve Steadings confidential information regarding HART's 17" Open Tool Tote and 12" Electrician Tote, including prices and design details. Morris then used this information in connection with MADI's business.

j.    On March 21, 2023, Morris emailed Steve Steadings confidential design and testing information for TTI's pliers and trigger clamps. Morris then used this information in connection with MADI's business.

42.    On or about May 23, 2024, following his termination from TTI, MADI filed a Foreign Limited Liability Company Application for Registration in Alabama, signed by Jason Morris as CEO/President.

43.    By at least September 2024, Morris was openly signing patent Powers of Attorney as "CEO" of MADI.

**E.  Davidian's MADI Activities During TTI Employment**

44.    Davidian conducted significant business on behalf of MADI while employed at TTI, including:

a.    Davidian signed patent Powers of Attorney on behalf of MADI in 2013.

b.    Venice Davidian (Davidian's wife) is documented as Co-Owner of MADI, LLC, having signed patent Powers of Attorney for MADI products, including the "Lineman Socket," in August 2016, while Davidian was still employed at TTI. Venice Davidian was not an inventor of any of the products for which she signed

11

patent Powers of Attorney.  Rather, Rick Davidian caused his wife to sign the patent Powers of Attorney falsely in order to conceal Rick Davidian's involvement with MADI and the development of its products.

c. On February 1, 2022, Rick Davidian personally signed a Power of Attorney document filed on behalf of MADI, LLC.

d. On September 4, 2014, Davidian emailed his Yahoo address with HART sales tracking data.  He then used this information in connection with MADI's business.

e. On June 1, 2017, Davidian sent TTI confidential information to his Yahoo email address.  He then used this information in connection with MADI's business.

f. On August 25, 2017, Davidian emailed his Yahoo address a quote for RYOBI 16' tape measure tooling and a 3D file.  He then used this information in connection with MADI's business.

g. On April 30, 2019, Davidian sent TTI confidential information to his Gmail address.  He then used this information in connection with MADI's business.

h. Morris copied Davidian at his TTI email address (Rick.Davidian@ttigroupna.com) on MADI product development communications, including discussions about improving MADI hammers and screwdriver designs. Davidian responded to one such email by stating, "wrong me . . . take me out of this loop!"  Davidian was communicating that Morris should not have emailed Davidian at his TTI email address and should have instead used a personal or MADI email account to discuss MADI business, in order to conceal their competitive activities from TTI.

i.   Davidian maintained a spreadsheet entitled "Copy of Retirement Timeline.xlsx," which reflected him earning dividends from MADI of up to $70,000 per year while employed by TTI.

## F.  Transfer of TTI Confidential Information

45.   Davidian engaged in a consistent pattern of forwarding TTI company information to his personal email accounts, which information was then used in connection with MADI's business:

a.   Multiple emails from 2012 through 2019 show Davidian forwarding TTI confidential materials to his Yahoo and Gmail accounts.

b.   Forwarded materials include: New Product Development Overview presentations; HART sales tracking data; wire brush product information; and RYOBI/Milwaukee tape measure quotations.

c.   In April 2019, Davidian shared a OneDrive TTI folder to a personal Gmail account, transferring a substantial volume of TTI documents.

46.   Morris likewise forwarded TTI confidential information to personal accounts and third parties, which information was then used in connection with MADI's business:

a.   Morris forwarded TTI supplier contact lists and vendor information to Steve Steadings and Rick Davidian, including comprehensive supplier information and HART storage product proposals.

b.   Morris forwarded supplier contact information to his personal Gmail account.

c.   In December 2018, Morris forwarded confidential Milwaukee Tool vendor strategy information, including a comprehensive supplier matrix, to Davidian and Steadings, with instructions to "map out our vendor support strategy."

d.    Morris forwarded TTI product specification documents and testing reports to Steadings when Steadings was no longer employed by TTI and was instead working full-time for MADI.

## G. Shared Supplier Relationships

47.    The same suppliers appear in both TTI and MADI product development correspondence, demonstrating that Morris and Davidian leveraged TTI's supplier relationships for the benefit of MADI:

a.    Heavy Hitter Group/Easy Strike manufactured products for both TTI (rubber hammers in 2016) and MADI (MLH-1 Lineman Hammers in 2021).

b.    Grown Up Group supplied products for both TTI's HART Storage line and MADI's Lineman Travel Bag.

## H. Overlap Between TTI and MADI Products

48.    MADI's product line includes lineman tools—hammers, pliers, wire brushes, knives, sockets, and storage bags—that compete directly with TTI's HART and Milwaukee Tool product lines in the power utility market.

49.    Patent filings by MADI, LLC cover products similar to TTI's power utility offerings, including Lineman Socket, Safety Knife, Utility Knife, Line Brush, Lineman Hammer, and Headlight designs.

## I. Morris's Fraudulent Procurement of Additional Severance

50.    Under Morris's 2024 Separation Agreement, Morris was eligible for a Conditional Additional Severance Payment of 52 weeks of severance pay, contingent upon Morris's diligent search for employment and his certification that he had not found other employment.

51.    From January 3, 2024, through January 3, 2026, Morris provided monthly certifications to TTI indicating that he had not found employment, thereby qualifying for and receiving the Conditional Additional Severance Payments.

52.    Morris's certifications were false. At all times during the conditional severance period, Morris was operating as the CEO/President of MADI, LLC.

53.    Morris's receipt of severance benefits while simultaneously serving as CEO of a competitor constitutes breach of contract and fraud.

## V.    CAUSES OF ACTION

**FOR A FIRST CAUSE OF ACTION**
**BREACH OF CONTRACT—2024 SEPARATION AGREEMENT**
**(Against Defendant Morris)**

54.    Plaintiffs reallege and incorporate by reference the preceding paragraphs as though fully set forth herein.

55.    The 2024 Separation Agreement between Morris and TTI is a valid and enforceable contract.

56.    Morris breached the 2024 Separation Agreement by, among other things:

a.    Obtaining the Conditional Additional Severance Payment by providing false certifications regarding his diligent work search and lack of other employment while he was simultaneously operating as CEO of MADI, LLC;

b.    Failing to return all TTI property, including confidential information and trade secrets, upon termination;

c.    Violating the confidentiality provisions of the agreement; and

d.    Engaging in conduct that violated the terms of the 2024 Restrictive Covenant Agreement incorporated therein.

57.    As a direct and proximate result of Morris's breaches, TTI has been damaged in an amount to be proven at trial, including but not limited to the 52 weeks of Conditional Additional Severance Payment wrongfully obtained by Morris.

### FOR A SECOND CAUSE OF ACTION
### BREACH OF CONTRACT—2024 ALCUA
### (Against Defendant Morris)

58.    Plaintiffs reallege and incorporate by reference the preceding paragraphs as though fully set forth herein.

59.    The 2024 ALCUA between Morris and TTI is a valid and enforceable contract supported by adequate consideration, including Morris's receipt of substantial severance benefits.

60.    Morris breached the 2024 ALCUA by, among other things:

a.    Failing to disclose his competing activities with MADI, as required by his duty of loyalty under Section 9 of the 2024 ALCUA;

b.    Using and disclosing TTI's confidential information and trade secrets in connection with MADI's business, in violation of Sections 4 and 5;

c.    Performing unfair competitive services for a competing company (MADI), in violation of Sections 15-18;

d.    Failing to return TTI property, including confidential information, in violation of Section 8; and

e.    Misappropriating TTI's supplier and customer relationships for the benefit of MADI.

61.    Pursuant to Section 21 of the 2024 ALCUA, TTI is entitled to terminate all severance payments, recover all severance payments already made, and recover its reasonable attorney's fees and costs.

62.     As a direct and proximate result of Morris's breaches, TTI has been damaged in an amount to be proven at trial.

## FOR A THIRD CAUSE OF ACTION
## BREACH OF CONTRACT—2011 ALCUA
### (Against Defendant Morris)

63.     Plaintiffs reallege and incorporate by reference the preceding paragraphs as though fully set forth herein.

64.     On February 17, 2011, Morris executed an ALCUA, which remains in full force and effect in addition to the 2024 ALCUA. The 2024 Separation Agreement expressly acknowledges that the Morris 2011 ALCUA continues in full force and effect, and breach of either the 2011 ALCUA or the 2024 ALCUA absolves TTI of any obligation to pay remaining severance and entitles TTI to all additional legal and equitable remedies.

65.     Morris breached the Morris 2011 ALCUA by, among other things:

a.     Failing to disclose his competing business activities with MADI during his employment, in violation of his undivided duty of loyalty under Section 7, which required Morris to promptly notify the Company at any time he decided to enter into competition with the Company or an Affiliated Company;

b.     Using and disclosing TTI's Trade Secrets during and after his employment in connection with MADI's competing business, in violation of Section 3, which prohibits the use or disclosure of Trade Secrets;

c.     Using and disclosing TTI's Confidential Information during his employment and during the two-year post-employment period in connection with MADI's competing business, in violation of Section 4;

d.      Failing to assign Proprietary Creations conceived, authored, or developed during his employment to the Company, in violation of Section 5, which provides that all such creations are the sole and exclusive property of the Company and requires Morris to assign all rights, title, and interest therein;

e.      Failing to return all Company Information upon termination of employment, copying and transferring Company Information to personal accounts and third parties without the express written consent of the Company, and failing to present personal storage devices to the Company for inspection and removal of Company Information, in violation of Section 6;

f.      Performing services of the type he performed for the Company as part of the business of designing, testing, developing, or producing Competing Products for sale, and as part of the business of selling, soliciting the sale of, or providing Competing Products, in violation of Sections 12 and 13; and

g.      Taking actions adverse to his undivided duty of loyalty to the Company, including secretly forming and operating a competing business while employed by TTI.

66.      Pursuant to Section 15 of the Morris 2011 ALCUA, upon breach by Morris, Morris is obligated to pay the Company's reasonable attorney's fees and costs arising from such breach.

67.      As a direct and proximate result of Morris's breaches, TTI has been damaged in an amount to be proven at trial.

**<u>FOR A FOURTH CAUSE OF ACTION</u>**
**BREACH OF CONTRACT—2011 ALCUA**
**(Against Defendant Davidian)**

68.      Plaintiffs reallege and incorporate by reference the preceding paragraphs as though fully set forth herein.

18

69.     The 2011 ALCUA between Davidian and TTI is a valid and enforceable contract.

70.     Davidian breached the 2011 ALCUA by, among other things:

a.     Failing to disclose his competing business activities with MADI during his employment, in violation of Section 7 (Duty of Loyalty);

b.     Using and disclosing TTI's confidential information and trade secrets during and after his employment, in violation of Sections 3 and 4;

c.     Failing to return TTI property upon termination, including company information forwarded to personal email accounts, in violation of Section 6;

d.     Performing services of the type he performed for TTI (engineering and product development) as part of the business of designing, developing, and producing competing products for MADI, in violation of Sections 12 and 13; and

e.     Failing to assign Proprietary Creations developed during his employment to TTI, in violation of Section 5.

71.     Pursuant to Section 15 of the 2011 ALCUA, TTI is entitled to recovery of its reasonable attorney's fees and costs.

72.     As a direct and proximate result of Davidian's breaches, TTI has been damaged in an amount to be proven at trial.

**FOR A FIFTH CAUSE OF ACTION**
**BREACH OF CONTRACT—SEVERANCE AGREEMENT**
**(Against Defendant Davidian)**

73.     Plaintiffs reallege and incorporate by reference the preceding paragraphs as though fully set forth herein.

74.     The Confidential Severance Agreement and Release executed by Davidian in October 2022 is a valid and enforceable contract.

19

75. Davidian breached the severance agreement by, among other things:

   a. Violating the restrictive covenant agreements that remained in full force and effect pursuant to Section 7 of the severance agreement;

   b. Failing to return all TTI property, including confidential information forwarded to personal email accounts, in violation of Section 10; and

   c. Violating the confidentiality provisions of the agreement.

76. Pursuant to Section 7 of the severance agreement, TTI is entitled to recover all severance payments made to Davidian.

77. As a direct and proximate result of Davidian's breaches, TTI has been damaged in an amount to be proven at trial.

**FOR A SIXTH CAUSE OF ACTION**
**MISAPPROPRIATION OF TRADE SECRETS UNDER THE DEFEND TRADE SECRETS ACT**
**(Against All Defendants)**

78. Plaintiffs reallege and incorporate by reference the preceding paragraphs as though fully set forth herein.

79. TTI possesses trade secrets as defined by the Defend Trade Secrets Act, 18 U.S.C. § 1836, et seq. ("DTSA"), including confidential business information, supplier relationships and contacts, vendor contacts, pricing information, product development plans, manufacturing specifications, testing procedures, and strategic business information related to TTI's hand tool and power utility product lines.

80. TTI has taken reasonable measures to keep this information secret, including requiring employees such as Morris and Davidian to execute agreements containing robust confidentiality, non-disclosure, and return-of-property provisions—such as the ALCUAs—and restricting access to confidential information.

20

81.     The trade secrets derive independent economic value from not being generally known or readily ascertainable through proper means.

82.     Morris and Davidian misappropriated TTI's trade secrets by:

a.  Forwarding confidential supplier information, vendor contacts, and product specifications to personal email accounts and third parties;

b.  Using TTI's trade secrets in connection with MADI's competing business; and

c.  Disclosing TTI's trade secrets to MADI and its affiliates.

83.     MADI used the misappropriated trade secrets to compete with TTI and received the benefit of Morris's and Davidian's wrongful conduct.

84.     The trade secrets at issue are used in, and the products and services involved in, TTI's business are used in and intended for use in interstate and foreign commerce.

85.     As a direct and proximate result of Defendants' misappropriation, TTI has been damaged in an amount to be proven at trial.

86.     Defendants' misappropriation was willful and malicious, entitling TTI to exemplary damages and attorney's fees pursuant to 18 U.S.C. § 1836(b)(3).

**FOR A SEVENTH CAUSE OF ACTION**
**MISAPPROPRIATION OF TRADE SECRETS UNDER SOUTH CAROLINA LAW**
**(Against All Defendants)**

87.     Plaintiffs reallege and incorporate by reference the preceding paragraphs as though fully set forth herein.

88.     TTI possesses trade secrets as defined under South Carolina common law and the South Carolina Trade Secrets Act, S.C. Code Ann. § 39-8-10, et seq.

89.     Defendants misappropriated TTI's trade secrets.

90.     As a direct and proximate result of Defendants' misappropriation, TTI has been damaged in an amount to be proven at trial.

91.     Defendants' misappropriation was willful and malicious, entitling TTI to punitive damages and attorney's fees.

## FOR AN EIGHTH CAUSE OF ACTION
### BREACH OF FIDUCIARY DUTY / BREACH OF DUTY OF LOYALTY
### (Against Defendants Morris and Davidian)

92.     Plaintiffs reallege and incorporate by reference the preceding paragraphs as though fully set forth herein.

93.     As officers and/or senior employees of TTI, Morris and Davidian owed TTI fiduciary duties and duties of loyalty during their employment, including duties of candor, good faith, and loyalty.

94.     Morris and Davidian breached their fiduciary duties and duties of loyalty by, among other things:

   a. Secretly forming and operating a competing business (MADI) during their employment with TTI;

   b. Conducting MADI business during their employment with TTI and while receiving TTI salaries and benefits;

   c. Using TTI confidential information and trade secrets for the benefit of MADI;

   d. Diverting TTI's supplier relationships to MADI;

   e. Failing to disclose their competing activities to TTI; and

   f. Taking actions adverse to TTI's interests while employed by TTI.

95.     As a direct and proximate result of Morris's and Davidian's breaches of fiduciary duty, TTI has been damaged in an amount to be proven at trial.

22

## FOR A NINTH CAUSE OF ACTION
### TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS
### (Against Defendant MADI)

96.    Plaintiffs reallege and incorporate by reference the preceding paragraphs as though fully set forth herein.

97.    TTI had valid contractual relationships with Morris and Davidian, including the 2011 ALCUAs, the 2024 ALCUA, and the separation and severance agreements.

98.    MADI had knowledge of these contractual relationships.

99.    MADI intentionally and improperly induced Morris and Davidian to breach their contractual obligations to TTI by, among other things:

a.    Accepting and using TTI confidential information and trade secrets from Morris and Davidian;

b.    Employing Morris and Davidian to perform services in violation of their restrictive covenants;

c.    Using TTI's supplier relationships misappropriated by Morris and Davidian; and

d.    Benefiting from Morris's and Davidian's breach of their duties of loyalty.

100.    As a direct and proximate result of MADI's tortious interference, TTI has been damaged in an amount to be proven at trial.

## FOR A TENTH CAUSE OF ACTION
### UNJUST ENRICHMENT
### (Against All Defendants)

101.    Plaintiffs reallege and incorporate by reference the preceding paragraphs as though fully set forth herein.

102.    Defendants have been unjustly enriched at TTI's expense through their wrongful conduct, including:

23

a. Morris and Davidian receiving TTI salaries and benefits while secretly operating a competing business;

b. Morris receiving severance payments while operating as CEO of a competitor;

c. Davidian receiving severance payments while violating the restrictive covenants and confidentiality agreements to which he was bound;

d. MADI benefiting from TTI's confidential information, trade secrets, and supplier relationships misappropriated by Morris and Davidian;

e. MADI benefiting from Morris and Davidian's disloyalty and breach of their agreements with TTI; and

f. Defendants profiting from products developed using TTI's proprietary information.

103. It would be unjust for Defendants to retain the benefits they received through their wrongful conduct.

104. TTI is entitled to disgorgement of all profits and benefits unjustly obtained by Defendants.

### FOR AN ELEVENTH CAUSE OF ACTION
### FRAUD
### (Against Defendant Morris)

105. Plaintiffs reallege and incorporate by reference the preceding paragraphs as though fully set forth herein.

106. Morris made material misrepresentations to TTI by repeatedly providing written certifications under the 2024 Separation Agreement from January 3, 2024, through January 3, 2026 that he had not found employment and was "still looking" or "still searching" for a role, when in fact he was operating as CEO/President of MADI, LLC, a competing business.

107. Morris knew these representations were false when he made them.

24

108.     Morris made these misrepresentations with the intent to deceive TTI and to induce TTI to continue making Conditional Additional Severance Payments and provide subsidized COBRA healthcare contributions at active employee rates.

109.     TTI reasonably relied on Morris's false representations. TTI continued Morris's Conditional Additional Severance Payments and COBRA subsidy in reliance on Morris's certifications that he had not found employment.

110.     As a direct and proximate result of Morris's fraud, TTI has been damaged in an amount to be proven at trial, including but not limited to the full value of all Conditional Additional Severance Payments and COBRA subsidies paid to Morris from January 3, 2024, through January 4, 2026, based on his false certifications.

111.     Morris's conduct was willful, wanton, and in reckless disregard of TTI's rights, entitling TTI to punitive damages.

### FOR A TWELFTH CAUSE OF ACTION
### CIVIL CONSPIRACY
**(Against All Defendants)**

112.     Plaintiffs reallege and incorporate by reference the preceding paragraphs as though fully set forth herein.

113.     Beginning in or about 2011, and continuing thereafter, Morris and Davidian knowingly and willfully combined, conspired, and agreed with one another to obtain confidential and proprietary business information from Plaintiffs and disseminate that information without authorization.

114.     Pursuant to this agreement, Morris and Davidian knowingly and willfully agreed to misappropriate and disclose confidential and proprietary information and disseminate such

information to MADI for the purpose of financially enriching themselves and MADI and injuring Plaintiffs.

115.     Morris and Davidian took the following overt actions in furtherance of the conspiracy:

a. Improperly obtaining Plaintiffs' confidential and proprietary information and documentation;

b. Inducing others to form the entity MADI for the purpose of utilizing the improperly obtained confidential and proprietary information;

c. Transferring confidential and proprietary information to MADI; and

d. Using Plaintiffs' confidential and proprietary information to benefit MADI and the individual Defendants.

116.     Upon information and belief, one or more officers and authorized employees at MADI knowingly and intentionally agreed to accept confidential and proprietary information from Morris and Davidian for the purpose of enriching MADI and injuring Plaintiffs.

117.     The above-mentioned acts were undertaken pursuant to the common plan and agreement between Morris, Davidian, and MADI, and were done knowingly, intentionally, and for the purpose of causing harm to Plaintiffs while conferring financial benefit upon themselves.

118.     Defendants' actions were willful, malicious, and undertaken with a conscious disregard for Plaintiffs' rights.

119.     As a direct and proximate result of Defendants' conspiracy and conduct, Plaintiffs have suffered special damages separate and distinct from other claimed damages, including the costs of investigation and review required to identify the scope of Defendants' coordinated transfers

26

and use of Plaintiffs' trade secrets and confidential information, and the costs incurred to mitigate and remediate such damages.

**FOR A THIRTEENTH CAUSE OF ACTION**
**VIOLATION OF THE UNFAIR TRADE PRACTICES ACT, S.C. CODE ANN § 39-5-10,**
**et seq.**
**(Against All Defendants)**

120.    Plaintiffs reallege and incorporate by reference the preceding paragraphs as though fully set forth herein.

121.    Defendants are engaged in trade and commerce in the state of South Carolina as defined in the South Carolina Unfair Trade Practices Act. § 39-5-10(b).

122.    Morris and Davidian deceived Plaintiffs into employing them for the purpose of gaining access to Plaintiffs' confidential and proprietary business information to unlawfully transfer said confidential information to MADI.

123.    At all relevant times Morris and Davidian held themselves out as employees acting in the interest of Plaintiffs.

124.    Morris and Davidian intended to cause Plaintiffs to rely on the deception that they were acting in their capacity as employees of Plaintiffs and Plaintiffs did, in fact, rely to their detriment on that deception by allowing Morris and Davidian to access confidential and proprietary business information and compensating them as employees.

125.    While engaged in trade or commerce within the state of South Carolina, Defendants, by and through their agents, employed methods and engaged in acts which were unfair and deceptive in direct contravention of § 39-5-20(a), as set forth herein more fully.

126.    Specifically, the deceptive and unfair acts and methods of Defendants include but are not limited to the following:

27

a. Failing to disclose competing financial interests that were material to their contracts with Plaintiffs;

b. Actively concealing their connections with a competing business, MADI;

c. Engaging in a course of conduct wherein Defendants effectively concealed their true motive to obtain confidential and proprietary business information that would have otherwise prohibited their employment with Plaintiffs.

d. Improperly obtaining Plaintiffs' confidential and proprietary information and documentation unrelated to their employment;

e. Inducing others to form the entity, MADI, for the purpose of utilizing the improperly obtained confidential and proprietary business information;

f. Transferring Plaintiffs' confidential and proprietary business information to MADI; and

g. Using Plaintiffs' confidential and proprietary business information to benefit MADI and the individual Defendants.

127. These acts were deceptive and unfair because they were unlawful and have resulted in the enrichment of Defendants, if successful.

128. As a result of the unfair and deceptive acts Plaintiffs have suffered damages including loss of business opportunities, economic losses and other damages to be proven at trial.

129. Defendants' unfair and deceptive acts affect the public interest because they have the potential for repetition and were part of an ongoing business practice by which Defendants developed, marketed, and sold competing products using misappropriated trade secrets and confidential and proprietary information.

130.    Plaintiffs are entitled to an award of damages against Defendants in accordance with § 39-5-140(a), together with costs and reasonable attorney fees associated with bringing this action.

**FOR A FOURTEENTH CAUSE OF ACTION**
**RETURN OF PROPERTY**
**(Against Defendants Morris and Davidian)**

131.    Plaintiffs reallege and incorporate by reference the preceding paragraphs as though fully set forth herein.

132.    Under their respective agreements with TTI, Morris and Davidian were required to return all TTI property upon termination of employment.

133.    Morris and Davidian failed to return all TTI property, including confidential information and trade secrets forwarded to personal email accounts and third parties.

134.    TTI is entitled to the return of all its property in the possession, custody, or control of Morris and Davidian.

**VI.     PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants as follows:

a.      Awarding Plaintiffs compensatory damages against all Defendants in an amount to be proven at trial, including lost profits proximately caused by Defendants' wrongful conduct;

b.      Awarding Plaintiffs recovery of all payments made to Morris during the period of his disloyalty, including all forms of compensation, salary, all severance payments made to Morris, including the Conditional Additional Severance Payments, vehicle benefits, COBRA contributions, and other benefits wrongfully obtained;

29

c.    Awarding Plaintiffs recovery of all payments made to Davidian during the period of his disloyalty, including all forms of compensation, salary and all severance payments made to Davidian;

d.    Awarding Plaintiffs disgorgement of all profits earned by MADI through the use of TTI's trade secrets, confidential information, and supplier relationships;

e.    Awarding Plaintiffs punitive and/or exemplary damages against all Defendants for their willful and malicious conduct;

f.    Ordering Defendants to return all TTI property in their possession, custody, or control;

g.    Entering injunctive relief prohibiting Defendants from using or disclosing TTI's confidential information and trade secrets;

h.    Awarding Plaintiffs their reasonable attorney's fees and costs incurred in this action, as provided by the parties' agreements and applicable law;

i.    Awarding Plaintiffs pre-judgment and post-judgment interest as allowed by law;

j.    Granting such other and further relief as the Court deems just and proper.

## VII.    JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Respectfully submitted,

*s/Henry L. Parr, Jr.*

Henry L. Parr, Jr. (Fed. Id. No. 2984)
Gregory J. English (Fed. Id. No. 5737)
WYCHE P.A.
P.O. Box 728
Greenville, SC 29602
Tel: (864) 242-8200

30

Email:  hparr@wyche.com
        genglish@wyche.com


Jordan D. Factor (*pro hac vice* application to be filed)
Robin A. Jackson (pro hac vice application to be filed)
Peter G. Clements (Fed. Id. No. 14396)
Michael Best & Friedrich LLP
675 15th St., Ste. 2000
Denver, CO  80202
(720) 245-2421 (telephone)
jordan.factor@michaelbest.com
rajackson@michaelbest.com
peter.clements@michaelbest.com

Attorneys for Plaintiff

31